Case number 14-1511, John Moody v. Michigan Gaming Control Board, et al. Oral argument not to exceed 15 minutes per side. Hugh Davis for the appellant. If it pleases the court, we'll reserve five minutes. Thank you. You may. This case has a lot of moving parts, a lot of separate events, a lot of parties, and a lot of arguments. But if there is any factual or legal basis for the defendant's assertions, either here or in the district court, they're not apparent to me. When the plaintiffs first went to state court in July of 2010, the defendants argued against the injunction on the grounds that there was a serious, intensive criminal investigation ongoing in a critical stage. We know that wasn't true. They never had any evidence. They never brought any charges. They had nothing but anonymous tips and coerced statements. They never had anything more. But they have perpetuated this case based on that claim since. Am I right, your guys have now been re-licensed as of 2014 or so, is that correct? That's correct, your honor. I brought a mandamus in state court shortly after that. So your claim rests on the period in which they could not work from the time of the suspension to the time of the re-licensing, is that correct? Injunctive relief is out of the case. Okay. There's no damages allowed here. There's no question about that because of the 11th Amendment, is that correct? I'm sorry? Oh, yes, I agree. The only question, but there is no or is there equitable relief you're seeking? No. We do seek declaratory relief regarding the denial of due process, but there's no equitable relief. There's no relief except just a declaration. And damages. What the damages are for the, but then who do you sue if they have 11th Amendment, who do you get the damages from if the state has 11th Amendment immunity? The individual defendants. Okay, the individual defendants. And their individual capacities. Their individual capacities, okay. The defendants claimed that without any record that the plaintiffs agreed not to have any administrative process pursued. There's no record of that, no documentation of that. The law doesn't allow that. In a case of a summary suspension, it's mandatory to begin administrative proceedings within 14 days. Well, let's distinguish the suspension from the exclusion. As I read the documents and help me here, the regulations with respect to suspensions do appear to say you have 10 days to file an appeal. Mr. Ernst cited that with respect to exclusion, and you're correct that that doesn't apply to exclusion. The exclusion reg has no time limit. That's correct. Am I basically correct on that? You're right. Okay, so with respect to the suspension, though, number one, that time has passed, and you didn't file an appeal within 10 days, as near as I could tell. That's not true, Your Honor. Okay, how did you file an appeal? I filed both in the circuit court in Wayne County and under the Administrative Procedures Act five days, that is, May 26, 2010. And where would we find that document? I mean, I understand about the circuit court, but as far as what you say is the administrative appeal, where would we find that document? I don't have the entire record in front of me, but I cited it in my brief on more than one occasion, and I'll be happy to give you a specific. Okay, so as far as the suspension goes, but in any event, the suspension was only for a fairly brief period. The big damages would come from the exclusion. That's not actually true. Under the regulations and statutes which apply, a summary suspension can only last for 90 days. Right. But this one was indeterminate. It wasn't until after I filed this lawsuit and we had our preliminary injunction hearing in the district court that the defendants agreed, and this was now, it wasn't until 2013 that we had it, that we could have a hearing on both the initial suspension and on the exclusion. But as you said, the suspension only lasted 90 days. There was an order of exclusion issued on November 30 of 2010, so that's what covers the three- or four-year period, most of that period, isn't it? It is true, but they never lifted the suspension. It was only when my clients were about to be allowed to reapply for the year 2011 that the defendants entered the exclusion, excluding them from the premises, and then they used the fact of the Well, so you're saying that there was no order of exclusion in 2010? There was, November and December. All right. So then that's what applied. I mean, I don't understand why you're pressing on the suspension if the exclusion was already in effect. The suspension, you just said, expires in 90 days under law. It didn't expire in 90 days. They wouldn't let them come back. It was an indeterminate suspension. And then when they were going to have a chance to reapply and, if denied, get judicial review, a month before that time, they entered the exclusions. Once they entered the exclusions, they took the position that they could never reapply until the exclusions were lifted, and then took the position that the appeal of the exclusions was untimely. So it turned out to be a permanent suspension and exclusion. Well, let's go to sort of the merits of what started all this, which was, I take it, that they refused to testify and potentially incriminate themselves. That's correct. Isn't that sort of the constitutional crux here? It's certainly the constitutional crux under the Fifth Amendment self-incrimination clause. We're still stunned. We couldn't get discovery in the district court. They were cooperating. They had cooperated. They had a lawyer. They had the documents. They were prepared to go to the stewards' hearing, which billed itself as an informal investigative hearing into possible race fixing. The day before, recorded by their attorney at that time and in a letter, which the stewards were aware of, this rogue state police officer, whom we've never been able to depose, called the attorney and said, tell your clients to get ready. They're going to be arrested after the stewards' hearing tomorrow. So they went to the stewards' hearing without any idea of what they might be arrested for or on what evidence. Therefore, they couldn't possibly know what answer to what question might incriminate themselves. No lawyer would allow them to testify under those circumstances. Then, even though there's a just cause in the state law for refusing to cooperate, they were simply summarily suspended. And we, as I said at the beginning, we now know that there was never any evidence and never has been any evidence. So our clients did everything they could. They went to the circuit court. They invoked their administrative rights. After the conclusion of the judicial proceedings in the state court, they tried to have the exclusions lifted and be readmitted. And they were actually told in January of 2012, you can't reapply because the judicial action precluded the administrative proceedings, which is clearly not true under Barry v. Barchi. They were in no man's land. And they have never left it or never did leave it until the spring of 2014. I think I've only got three minutes left, so I should sit down. No, your time is your time. I understand, Your Honor, but I'm looking at the thing. Thank you. Go around.  Thank you. Good morning, Your Honors. May it please the Court, Jason Geisler. The issue in this case and the relief that they are seeking is that any time they would face an administrative penalty for a violation of either the horse racing law or the administrative rules, where there might be the possibility of criminal exposure, that they are allowed to not only remain silent, but to continue to participate in the industry, even if the violation that they are alleged to have committed would severely impact the integrity of the sport. Well, you could have potentially suspended them for actually violating whatever the rules were, but it appears that you suspended and excluded them for not cooperating in the process, which then invokes all of the chain of cases about self-incrimination. And, Judge Boggs, to address that question, there's two things that I would like to mention. The first is that to address what Mr. Davis has placed before the Court about a summary suspension. The summary suspension actually never took place in this case. Summary suspension occurs when you're suspended without a hearing, and then you have certain post-suspension relief within 14 days you're entitled to a hearing, and that summary suspension can only last 90 days. In this case, however, they were afforded a hearing ahead of any sort of adverse action against their license, ahead of a suspension. By that you mean the hearing at which they wouldn't testify. That is correct. But then, I was raising the point that you didn't say, well, based on the evidence of race-fixing and the lack of evidence on your side, because they don't have an adverse inference, I guess, we're going to suspend you for race-fixing. But you suspended them, as I understood it, for the failure to cooperate. The notice that they were provided did indicate that. They were being brought in to address allegations of race-fixing. Well, but the question is not what they were brought in for, but what you actually suspended them for. But during the hearing, Judge Brock... And I'm reading from the order of exclusion, but presumably it's stating it correctly. The stewards suspended Moody for failing to comply with the conditions for occupational licensing, which is a failure to cooperate, isn't it? That is correct, Your Honor. And it was actually explained at the hearing, at the hearing that they were brought in, the original stewards' hearing, when they were not answering questions. And keep in mind that these questions were not only of a criminal nature. Some of these were involving non-criminating questions, such as, do you know anybody else that may have engaged in this activity? Do you recognize this racing application? Have you ever signed a racing application? And each one of these drivers was reminded at that stewards' hearing of their duty to cooperate. In fact, their counsel even went so far as to defend against the claim that they were not cooperating. So they were provided notice at the time of the hearing, and before they were ever suspended, that they have a duty to cooperate. Well, but so do you think that all of these cases about, you need to be, they basically go to policemen, public officials, if you're going to force them to testify as to things that might be self-incriminating, you need to immunize them, which you clearly didn't do here. Well, there's, the two... And I think what you're referring to, Your Honor, is the Garrity line of cases that deal with public employment. And that can be distinguished in this regard for a couple of reasons. Number one, these gentlemen that were licensed, that were formerly licensed by the Gaming Control Board, were not public employees of the Gaming Control Board. They were licensees with the Gaming Control Board acting as the regulatory body over a strictly regulated industry. I'm sure you're familiar with the licensing case of lawyers from New York in the Supreme Court some time ago. You familiar with that case? The lawyer wouldn't produce certain documents, was accused and arrested on his rights under the Fifth Amendment. And the Bar Association disbarred him. The case went to the Supreme Court. The Supreme Court ruled that that violated the Fifth Amendment due process clause. Are you familiar with that case? We have reviewed that case. I believe it was mentioned by the appellants in their brief, their principal brief. Stevak, isn't it? To address that case, I think that can be distinguished on a few different grounds. The Garrity line of cases and the cases that you mentioned, I think, go towards focusing on the criminal aspect of whatever alleged misconduct was to have occurred. This is purely administrative. It was explained to these individuals at the time of their steward's hearing that nobody was going to be arrested. This was not a criminal case, regardless of what was said between counsel at that time and the state police officer, which had nothing to do with this administrative matter. And I have the record sites for that. If the court would care to review the record, it's very clear. This is a transcript of the steward's hearing? Yes, Your Honor. What pages would you cite? If you take a look at, with regard to John Moody, docket entry number 19-4, page ID number 365 and 366. With regard to Mr. Harmon, docket entry 19-5, page ID 380 to 381. Okay, we can look for it. Thank you. Thank you. But what those docket entries will make clear to the court is that the record in this case fairly clearly stated to these individuals that none of what they were saying was ever going to be used against them criminally because this was not a criminal case. This was an administrative matter, purely administrative. How could that, when you say nothing would be used against them because of this matter, how could the stewards make that promise with respect to criminal prosecution? Because I think this court actually weighed in on that decision. There's a difference between saying, oh, it's okay, nothing will happen to you, and saying we hereby immunize you. You agree with that, wouldn't you? There's a difference. But I don't think that whether they were immunized or not has any bearing on whether there's a Fifth Amendment violation. And I would point this court to not only, first, the Chavez versus Martinez case that we cited extensively in our brief. It was a U.S. Supreme Court case that involved an individual that filed a 1983 action against a police department for what he claimed was compelled testimony when they interrogated him at the hospital. And what the court came down and stated was that statements compelled by police interrogation may not be used against a defendant in a criminal case, but it is not until such use that the self-incrimination clause is violated. This is the guy that was shot and they're talking to him in the hospital, right? That is correct. Which, at least on its face, isn't anywhere near this particular case. But the principle that applies in that case, that you don't have a Fifth Amendment violation unless and until it's used against you in a criminal proceeding in which you are a witness. So you think it doesn't, that that does not apply in any way to, and, of course, in that case the only thing involved was a criminal proceeding. They weren't trying to take his, suppose he'd been a lawyer and he's in the hospital and he is not immunized or even Mirandized, and then they force him to give answers that are later used to disbar him. You think it just wouldn't apply? I don't think it would apply in this case. And not only wouldn't it apply, but it would conclusively defeat his claim with respect to his disbarment, which is really what you need here. But in this case, this court actually weighed in on the Chavez decision in the McKinley v. City of Mansfield case, and that did involve a police officer that, what I'll call the scanner gate case, where they listened to a conversation that a criminal defendant had on his cell phone on the police scanner. And there was an internal investigation as a result of that, and the court held that it is now clear that in light of the Chavez decision that mere coercion does not violate the self-incrimination clause absent the use of those compelled statements in a criminal case. In this case, there has been no criminal charges. They've never been charged. They've never faced a criminal trial. But I would also argue that in this case, we are entitled to qualified immunity. The MGCB and the staff is entitled to qualified immunity. And at the outset of the threshold matter, I believe it's clear that because that... Do you think the case law is so clear that there's qualified immunity under the standard for clarity? Well, I think the district court was correct in holding that there was no constitutional violation here in light of the Chavez decision, in light of the McKinley decision. I would also argue that the appellants waived this issue because at no point in time in their principal brief on appeal to this court was the issue of immunity ever addressed. Now, keep in mind, they had... Let me ask you this. Yes, Your Honor. Under Michigan law, is there a statute that allows the racing commission to grant immunity in connection with proceedings? I'm not aware of any... Where would be there a power or authority to grant immunity? They don't have that power, do they? I'm not aware of it. I'm not aware of it. They can only do what they can do on the administrative side of the case. The criminal investigation or any criminal case that may be running parallel to that, they simply don't have any involvement in that. It's two separate and distinct investigations. With respect to the qualified immunity, the district court ruled on no constitutional violation, right? Correct. So if we think there's a constitutional violation, wouldn't the proper remedy be to remand and then let the district court take a crack at it? You would then re-raise your qualified immunity defense, and we'd see what the district court thought about it. And I don't think that it would necessarily warrant a remand just based on that finding, Your Honor, and that's because there's two prongs to that analysis. The second prong being, if there's a violation, was it clearly established? In this case, I don't think there's any clear case law that addresses specifically whether somebody has a fundamental right to a license in terms of a highly regulated industry such as parametrial gaming, horse racing specifically. And so because the appellants never addressed both of those prongs, that's even more indicative of the fact that they've waived that argument on appeal. Okay. I see that argument. Let's talk a minute about this timing of suspensions, exclusions, and who shot John in what order, okay? Because as I read with respect to what did they appeal, there's a letter on September 15th from Mr. Ernst, September 15th, 2011, which says you have 10 days to file an appeal, but he's citing the suspension section, not the exclusion section. Then there's the November 16th letter where he says your time has just passed for the exclusion. So let's take those two separately. Your adversary says he did file within 10 days on the suspension on May 26th. Is he right or wrong about that? He is correct that they filed an administrative appeal. Okay. And then your brief says something like the administrative appeal did not proceed. Now, what happened there? What happened, Your Honor, was that at the same time that they filed their administrative appeal, they also filed and sought injunctive relief in the state circuit court, Wayne Circuit Court. And at the time, there was an understanding between the parties, and although it's not part of the record, there was a separate administrative appeal that did occur in this case, in which the administrative law judge concluded that not only was the suspension proper, but so too was the exclusion. And so to speak to this timeline. And that must have happened considerably later because the exclusion order wasn't entered until something like six months after the suspension order, right? That is correct. What happened was the initial suspension ran until the end of the licensing year. Because, and the purpose of the exclusion order is twofold. Not only does it continue the suspension, but it also keeps them from the grounds of the racing facilities. So when you're talking about an issue involving the integrity of a sport, that became necessary. And it uses, in these later letters, the fact that there was an order of exclusion to prevent them from even trying to get back in, which seems kind of odd in the sense that then they're barred for 50 years without any ability to challenge that. And that's not actually true, Your Honor. Because what they could have done is what was explained to them specifically in a number of letters. You referenced one of the letters, the September 15, 2000 letter. There's also an August 31, 2011 letter, a November 16, 2011 letter. The 16th I have. And then there's a January 13, 2012 letter. In each one of those cases, it indicates to them that not only are they excluded, but until that exclusion is lifted, they cannot have their applications considered. And it says that the time to appeal has long passed, so it doesn't seem to say there's any way to challenge it. They then attempted to reapply, which you would think would be an opportunity to relitigate it, but you said you won't consider it because of the order of exclusion, right? Well, the problem with the order of exclusion, Your Honor, is that actually none of the appellants until November 27, 2012, well after the federal litigation was filed, ever requested that the exclusion order be lifted or ever specifically sought an appeal of the exclusion order. It never occurred until two years later. So what Mr. Davis is saying is that they attempted to appeal that order in 2011, and that's simply not true. It's not supported by the record. What they attempted to do was to seek relicensure, but the first time that they specifically sought to appeal that exclusion order was not until 2012. There's no time stated in the exclusion reg as to when it has to be brought. The letters don't say you had 20 days or 40 days or 60 days. Right. And I think in that situation, you could defer to the Administrative Procedures Act in Michigan, which sets forth either the court rules or the APA. Court rules gives you 30 days or 21 days to appeal. If you were to string that out in the APA, it would be 60 days. In either situation, they never addressed it within that time frame. Okay. Any other questions?  Okay, thank you. Thank you, Your Honor. Thank you. Mr. Davis, you have your remaining time for rebuttal. Yes, Your Honor. It's true. After we filed this case and after the state admitted that they had wrongly interpreted the statute with regard to the time for challenging an exclusion, they then agreed to allow the appeal. The Administrative Law Judge, which we finally got to in 2013, said, Listen, I'm going to say they did it okay, but I'm not going to rule on the Fifth Amendment issue. And therefore, the heart of the case goes right back to the beginning. Counsel, could I ask you, what you're seeking now is damages for the period of time they were unable to engage in harness racing? That's right. And that period is approximately three years? Actually, it ended up being almost four. They were readmitted in April of 2014. to put on evidence of damages during that period of time. That's all. And that's it. That's it. With regard to the highly regulated industry argument, the idea that horse trainers or drivers are the same as casino owners, in my view, it means that there would be nobody connected with the gambling industry anywhere in the United States would be entitled to due process. With regard to waiving immunity, immunity is a defense. The plaintiff can't waive that. With regard to McKinsey v. Mansfield and Chavez v. Martinez, those are criminal cases in which statements were gotten from the party being questioned, and within the context of a criminal case only. That's why they don't apply here. Did you ever find out precisely what evidence triggered, what claims triggered this matter to begin with, that they were guilty of kickbacks from gamblers? Actually, the search warrants which took place in this case and the investigation which took place in this case was not aimed at these plaintiffs. Those search warrants went to gamblers and other drivers, some of whom were, in fact, suspended, and properly so. The stewards' hearing simply said this is an informal investigative hearing into possible race-fixing based solely on coerced statements obtained by MSP Sergeant DeClerc, who was the same guy that called the plaintiff's lawyer the day before the stewards' hearing and said they're going to be arrested after the hearing. What was supposed to be their role in the fixing of the races? There really wasn't any. The most damning thing which was said by anybody about or by these plaintiffs was that they, quote, failed to give their best effort in some races. That can mean a sick horse, a sick driver, training run, building up strength. I mean, failing to give your best effort is not fixing a race for a gambler's benefit. That's a standard thing that stewards do, and they can set you down for a day or a week or a month or whatever, depending on their... There was never any connection between... That is, as I understand it, the stewards, the chief steward, after the hearing, did the suspension. The commission did the exclusion. Is there any difference in your attack on the individuals there? The stewards are mere race stewards. They're not administrative law judges. They're not legally trained. Mr. Geisler was at that hearing. He claims he didn't advise them. There could have been a just cause hearing because there's a provision in the statute. I'm not answering my question in terms of are you mad at the stewards or in the same way the commission? I mean, who are you trying to get the money from, or is it exactly the same as to the stewards as opposed to the commissioners? It's the commissioners. The commissioners. Okay. That's my answer. I'm sorry, Judge. Okay. Fine. All right. Anything else? Thank you, counsel. The case will be submitted. The clerk may call.